# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| JAVOKHIR RAHIMOV-AKOBIROVICH, | No. 25-CV-212-CJW-MAR |
| Petitioner, | **ORDER** |
| vs. | |
| KRISTI NOEM, et al., | |
| Respondents. | |

_____

Petitioner Javokhir Rahimov-Akobirovich's Petition for Writ of Habeas Corpus, (Doc. 1), Motion for Preliminary Injunction and Temporary Restraining Order ("TRO"), (Doc. 2), Motion for Immediate Grant of Relief, (Doc. 3), and second Motion for Preliminary Injunction and TRO, (Doc. 4), are before the Court. For the following reasons, the Court **dismisses without prejudice** petitioner's petition and motions.

## I. PROCEDURAL BACKGROUND

Petitioner is a citizen of Uzbekistan. (Doc. 1-2, at 1).[1] He arrived in the United States on October 26, 2020, and was not admitted or paroled. (*Id.*, at 1, 26; Doc. 12-3). Department of Homeland Security officials encountered petitioner on November 12, 2020, soon after his arrival near Calexo, California, and issued Petitioner a Notice to Appear ("NTA") before an immigration judge ("IJ") on December 4, 2020, asserting he

---

[1] Respondents cite to a declaration by Lanette Hernandez to support this claim in their response. (Doc. 9, at 3). The Court does not see that declaration on the docket, and for that reason, does not cite to it. The Court can see that it is listed on respondents' Notice of Filing Sealed Other Exhibits, (Doc. 12), but it appears to the Court that respondents did not file the actual document.

was subject to removal as an alien[2] unlawfully present in the United States.  (Doc. 1-2, at 1-2; Doc. 12-1; Doc. 9, at 3).  *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").  On December 1, petitioner requested a custody redetermination, under Title 8, United States Code, Section 1226(a), at which the IJ granted release on a bond of $5,000, under several conditions, including that the petitioner not violate any criminal or immigration law.  (Doc. 1-3; Doc. 12-2; Doc. 9, at 9-10).  At a final hearing held on December 1, 2021, the IJ denied petitioner's applications for asylum, withholding of removal, and relief under the Conventions Against Torture.  (Doc. 1-2; Doc. 9, at 10).[3]  The IJ did not order removal, but instead continued the case, because the Petitioner was named a derivative of his parent's asylum application.  (*Id.*)

On September 5, 2025, the Board of Immigration Appeals ("BIA") issued its decision in *Matter of Yajure Hurtado*, finding that "under a plain language reading of . . . 8 U.S.C. § 1225(b)(2)(A), [i]mmigration [j]udges lack authority to hear bond

---

[2] The United States Code and the accompanying federal regulations use the term "alien."  To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

[3] Petitioner claims that he will pursue lawful status in the United States by claiming asylum. (Doc. 1, at 2); s*ee* 8 U.S.C. § 1158.  The Court notes that there is a one-year filing deadline, subject to limited exceptions, for asylum applications.  *See* 8 U.S.C. § 1158(a)(2)(B).  Petitioner has not provided the Court will any documentation that he has actually applied for asylum for himself.  Petitioner also claims that his parents have applied for asylum for him as a derivative on their asylum applications.  (Doc. 14, at 2).  Petitioner has not provided the Court with any documentation of those applications either, and the Court notes that derivative asylum applications only apply to children under age twenty-one when the parent first applies.  *See* 8 U.S.C. § 1158(a)(3)(A); 8 U.S.C. § 1101(b)(1) ("The term "child" means an unmarried person under twenty-one years of age[.]").  Petitioner is now twenty-four years old.  (Doc. 12-3, at 1). Respondents cite to the Hernandez Declaration that is not in the case file for their assertion that petitioner has no requests for relief pending before the immigration court, but for the reason stated above, the Court is unable to consider that document.

requests or to grant bond to aliens . . . who are present in the United States without admission." 29 I&N Dec. 216, 225 (BIA 2025). The BIA so held because it determined that those "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228.

On November 20, 2025, petitioner was traveling through Iowa when he was apprehended, charged with failure to obey traffic control device, and eventually placed in ICE custody in the Hardin County Jail. (Doc. 1, at 2, 4, 26; Doc. 12-3, at 3; Doc. 12-4); *see* Iowa Code § 321.256 (failure to obey traffic control device).

On November 24, 2025, petitioner filed the instant petition for habeas corpus relief, (Doc. 1), and motion for a TRO and preliminary injunction, (Doc. 2), with this Court. Petitioner also provided the Court with Exhibits 1, 2, and 3. (Docs. 1-1 through 1-3). On December 2, 2025, petitioner filed a motion for immediate grant of habeas due to nationwide class membership. (Doc. 3). On December 4, 2025, the Court entered an initial review order, ordering respondents to respond or file a dispositive motion within fourteen days and allowing petitioner to reply to respondents' filing, if any, five days after that. (Doc. 5). The same day, petitioner filed a second motion for preliminary injunction and TRO. (Doc. 4). On December 11, 2025, petitioner had a master calendar hearing in immigration court. (Doc. 4, at 2; Doc. 12-4).

On December 18, 2025, respondents Peter Berg, Pam Bondi, Department of Homeland Security, Executive Office for Immigration Review, Immigration and Customs Enforcement, Todd Lyons, Kristi Noem, and Sirce Owen filed their response. (Doc. 9).[4] Respondents also provided the Court with Exhibits A, B, C, D, and E as well as

---

[4] As of filing, respondents Nick Whitmore and Dave McDaniel have not filed an appearance or response.

supplemental authority. (Docs. 12-1 through 12-5, 13). On December 23, 2025, petitioner filed a reply. (Doc. 14). Petitioner remains in ICE custody at the Hardin County Jail.[5]

## II.    LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    DISCUSSION

Petitioner argues that he "is harmed and illegally detained by [r]espondents' new, draconian policy reinterpreting the immigration detention statutes to preclude [p]etitioner from eligibility for bond[.]" (Doc. 1, at 1). He "asks for his immediate release from him illegal detention." (*Id.*, at 3). Respondents claim that petitioner is not entitled to relief because he has failed to request a bond redetermination hearing following his apprehension on November 20, 2025, and thus has not exhausted his administrative remedies. *See* (Doc. 9, at 4 ("Since he was brought into custody on November 19, 2025, Petitioner has not requested that [an immigration judge] determine bond.")). Petitioner

---

[5] https://locator.ice.gov/odls/#/results.

responds that "[a]ny further argument for bond or appeal to the BIA is futile [as] [t]he BIA has already adopted ICE's interpretation" regarding bond. (Doc. 14, at 2 (citing *Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA 2025))).

"The exhaustion requirement for § 2241 petitions is judicially created, not statutorily mandated, so when considering it, 'sound judicial discretion governs.'" *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *accord Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) ("[T]he exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional."). To determine whether to exercise their discretion to hear a Section 2241 habeas petition, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. "Where the parties are expected to develop the issues in an adversarial administrative proceeding, . . .the rationale for requiring issue exhaustion is at its greatest." *Sims v. Apfel*, 530 U.S. 103, 110 (2000); *see also Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (listing as circumstances in which courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.").

Here, the Court finds that petitioner must exhaust his administrative remedy of requesting a bond redetermination hearing before an immigration judge before this Court will hear his request for habeas corpus relief. Petitioner has not had a bond redetermination hearing in over five years, since December 1, 2020. He did not request one after his apprehension in November 2025. It is possible that in those five years, petitioner's circumstances have changed, but the Court cannot tell without a record fully

developed by the immigration court. The Court also cannot tell under what provision petitioner is being denied bond, and the Court requires the expertise of the immigration court here in order to generate a proper record, including if petitioner is in fact detained under Title 8, United States Code, Section 1225(b) or 1226(a), or if he would not be eligible for bond under some other provision. In addition, the Court is unable to determine what immigration relief, if any, petitioner relies on in support of his claims as the record before it is lacking documentation both by the parties and the immigration court.

The cases relied on by petitioner to argue against prudential exhaustion involved a bond redetermination hearing occurring within a few weeks of the petition for habeas corpus relief or pending relief before the immigration court. *See, e.g.*, *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *2 (S.D. Iowa Sept. 10, 2025) (petitioner had a bond redetermination hearing in August 2025 before filing his petition in September 2025); *Mosqueda v. Noem*, No. 25-cv-2304, 2025 WL 2591530, at *1 (C.D.Cal. Sept. 8, 2025) ("After being detained, each petitioner requested a bond hearing before an immigration judge."); *Sanchez Ballestros v. Noem*, No. 3:25-cv-594-RGJ, 2025 WL 2880831, at *1 (W.D. Ky. Oct. 9, 2025) ("Sanchez submitted an application for asylum before a Chicago Immigration Court."); *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *1 (N.D. Ill. Oct. 24, 2025) (petitioner "timely filed an asylum application with United States Citizenship & Immigration Services ("USCIS") and his application is still pending"). Therefore, the Court finds those cases inapposite to the matter here. The Court declines to exercise its jurisdiction to hear this matter until after the immigration court has determined petitioner's eligibility for bond through a bond redetermination hearing. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (holding that when a petitioner has not exhausted administrative remedies "a

6

district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies").

As to petitioner's argument that he should not be required to exhaust his administrative remedies because it would be futile, the Court disagrees. *See* (Doc. 14, at 2). True, the BIA has already adopted ICE's interpretation regarding bond. Also true, though, is that this Court, and many other courts around the country, has rejected that interpretation, told the BIA it is wrong, and has ordered the government to provide bond hearings under these circumstances. Thus, it is not at all a foregone conclusion that the government would ignore this Court's prior orders and deny petitioner a bond hearing, if he requested one. If it does, then petitioner can renew his motion before this Court.

### IV. CONCLUSION

For those reasons, the Court **dismisses without prejudice** petitioner's Petition for Writ of Habeas Corpus, (Doc. 1), Motion for Preliminary Injunction and Temporary Restraining Order ("TRO"), (Doc. 2), Motion for Immediate Grant of Relief, (Doc. 3), and second Motion for Preliminary Injunction and TRO (Doc. 4).

**IT IS SO ORDERED** this 23rd day of January, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa